STATE OF VERMONT

ENVIRONMENTAL COURT

|                      |   |                          |
|----------------------|---|--------------------------|
|                      | } |                          |
| Town of Calais,      | } |                          |
|     Plaintiff,       | } |                          |
|                      | } |                          |
|         v.           | } | Docket No. 142-6-06 Vtec |
|                      | } |                          |
| Barbara Noordsij,    | } |                          |
|     Defendant.       | } |                          |
|                      | } |                          |

Decision and Order

The Town of Calais brought an enforcement action against Defendant Barbara Noordsij, asserting violations of the conditions of her zoning permit for the construction of a barn. The Town is represented by Joseph McLean, Esq.; Defendant is represented by David Blythe, Esq.

After certain issues were resolved by summary judgment, an evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Defendant owns a 6.7-acre parcel of property at 8598 County Road in the Town of Calais, in the Rural Residential zoning district. Prior to the construction at issue in the present enforcement case, the property was improved with a single-family house and with a detached garage, itself having an attached shed.

In August of 2005, Defendant applied for a zoning permit to construct a 20' x 30'

1

prefabricated metal structure for use as a horse barn, oriented diagonally to the road. The building was designed with its vertical posts supported on concrete piers, and otherwise to have a dirt floor, and to be furnished with sliding barn doors. The permit application stated that the "building is engineered by Rockford Steel Building Systems" and that it was "to be built by local builder."

The application included a sketch plan showing the nearest corner of the barn to be 48 feet from the centerline of County Road. The Court does not find it to be credible that the version of the document showing the number "48" as having been written over to read "40" was the document submitted as the application and later approved by the zoning administrator. Defendant's signature on the application certified that "the information submitted in this application regarding the property is true, accurate and complete" and that she understood "that any permit will be issued in reliance on the above representations and will be automatically void if any are untrue or incorrect."

The then-newly-appointed Zoning Administrator issued the zoning permit authorizing the construction of the barn as shown on the application, with a front setback of 48 feet from the centerline of County Road.

As discussed in the summary judgment decision, the setback actually required for Defendant's property is 65 feet, because it is located along the County Road south of the Maple Corner village zoning district. Land Use Regulations, Table 2.2(E). Generally within the Town of Calais the required front setback is 40 feet,[1] except along the rights-of-way of

---

[1] Defendant asserts that she believed that the required setback was 40 feet. This belief was not reasonable and does not rise to an estoppel, as discussed in the summary judgment decision in the present case. At best, Defendant's belief could only have resulted from an inquiry she may have made by telephone to the Town Clerk, who had formerly served also for thirty-five years as the Zoning Administrator, without specifying the location of the property as being on the County Road, because at all times material to these events, the Town Clerk believed that the required setback on the County Road was 100 feet, and was

2

three specific roadways, including along County Road (State Aid Highway #1) in the location of Defendant's property. Regulations, Table 2.2(E). Prior to the 2005 amended regulations the setback along the County Road had been 100 feet from the centerline.

In mid-September of 2005, Defendant obtained an estimate of $16,763.62 from Shelter Construction, a local building firm, for the pre-engineered steel building. The estimate included $10,363.62 for the building's materials, including Vermont sales tax, plus $500 for the concrete for the footings. The estimate included $3,600 as labor costs for the footings and erection of the building, and $300 for rental of a forklift. The estimate also included $2,000 for leveling the area and digging five-foot-deep holes for the concrete footings below the leveled grade. This element of the estimate noted that "this estimate is based on working with existing soils" and specifically provided that "cost[s] for the removal of ledge, debris, excess soil, or providing additional soils are not included."

Defendant and the contractor had discussed the issue of ledge outcroppings, and Defendant knew that it would be an additional cost to deal with ledge.

The prefabricated building materials were delivered to the property between November 29 and December 1, 2005. The warranty on the building contained a condition that the building materials must be kept dry. The excavation for the footings began on November 30, and the concrete footings were poured on December 1, 2005. The contractor stacked the steel framing members, beams, wall sheathing, boxes of trim, doors and hardware on the ground on so-called bunkers or pallets, covered by tarps. The contractor

---

unaware that it had been reduced to 65 feet. If the Town Clerk had been asked by telephone about setbacks on the County Road, she would have responded '100 feet'; if she had been asked about setbacks generally she might have responded '40 feet.' Even if such a conversation occurred, the Court finds it not to be reasonable for an applicant to change an approved 48 foot setback on an issued permit and to proceed to build a project at a reduced setback based on such an unattributed and unrecorded conversation, without bringing the permit in to the Zoning Administrator for an amendment.

3

began the framing work around December 19, 2005.

Before the contractor started work, Defendant had staked out the barn for where she thought it should be. Even that original staked location was closer than the permitted 48 feet from the centerline of the County Road. Before the footings were poured Defendant and the contractor agreed to move the location of the footings a few feet from their staked position in order to avoid ledge and avoid the need for blasting. The building's footings were in fact located so that the nearest corner was set back only 41½ feet from the centerline of the County Road, in violation of the zoning permit. If Defendant had shown the contractor her zoning permit, or had staked out the building in compliance with the zoning permit, this enforcement action would not have been necessary.

The avoided cost of blasting at that time, prior to construction, was at least $2,500.

After the Zoning Administrator noticed construction equipment on Defendant's property in mid-December, she checked her records to determine whether a zoning permit had been issued for the property. She realized that she had made a mistake in the permit; that is, that the setback should have been 65 feet rather than the 48 feet that she had approved in the permit. Prior rulings in this matter have established that Defendant was entitled therefore to the benefit of the 48-foot-setback due to the error of the Zoning Administrator.

The Zoning Administrator notified Defendant orally on December 20, 2005 that construction appeared to be in violation of the permit and that continuing with construction might be unwise. The Court is persuaded that this oral notification did in fact occur, at least in part due to the vehemence of Defendant's oral response to the Zoning Administrator.

However, Defendant did not order her contractor to stop construction on December 20, 2005. The contractor would have stopped work if Defendant had told him to do so. Defendant and her contractor were concerned about the elements of the warranty on the

4

prefabricated building that depended on keeping the materials protected from moisture, however, the materials were stored in a way that was not well-protected from moisture on the job site. Defendant and her contractor could have arranged to move the materials to a protected storage location, but did not do so.

If Defendant had stopped construction on December 20, 2005, the Town would not have incurred significant costs in attorney's fees and the time of the Zoning Administrator in pursuing this enforcement action.

The written Notice of Violation directing Defendant to stop construction was issued the following day, December 21, 2005. As of midday on December 21, 2005, not only had the concrete footings been installed, but the eight substantial metal uprights had been installed and the ground-level and two intermediate levels of crosspieces of the frame of the walls of the building had been installed and fastened together, although none of the framing of the roof had commenced. The remainder of the prefabricated building materials were still located on the property on the ground under tarps. The ground was covered by snow.

As of that date, the cost of correcting the violation would have been the cost of dismantling the partial frame and transporting the materials to storage under cover, plus whatever blasting or other ledge removal would have been necessary to erect the prefabricated building in the permitted location. The cost of storage was estimated by the contractor at trial to be roughly $5,000. This estimate appears to the Court to be a low estimate, as it has to cover eighteen or nineteen months rental of a storage location protected from the elements, as well as the transportation of the materials in both directions, and the labor of any dismantling of the portion of the structure that had been completed as of that time. No other evidence of the avoided cost of storage was presented.

Defendant did not instruct her contractor to stop work or to move the building materials into storage. Approximately 70% of the contractor's time expended on the

5

project was expended after December 20, 2005 through some time in February 2006. If Defendant had stopped construction on December 21, 2005, the Town would not have incurred significant costs in attorney's fees and the time of the Zoning Administrator in pursuing this enforcement action.

In Defendant's appeal of the Notice of Violation, the DRB determined that, under the doctrine of estoppel, "the town is barred from enforcing the 65' setback requirement" but upheld the notice of violation of constructing the barn closer to the road and in a location different from that in Defendant's permit application. The DRB also denied Defendant's request for a variance. Neither Defendant nor the Town appealed the DRB decision and it became final.

In July of 2006, Defendant obtained an estimate for moving the building to the approved location. This estimate included lifting the building, and installing a new poured concrete slab foundation over tamped sand and rigid insulation. The estimate was for $16,870, which would have been a measure of the cost of bringing the property into compliance with the originally-issued permit, that is, if the building had not received later approval of the as-built location.

After certain legal issues were resolved, Defendant applied for approval to leave the barn in place in its as-built location. The DRB granted that approval under § 3.8(B)(4) on July 18, 2007. Therefore the duration of this violation was 566 days, from seven days after the Notice of Violation, to the date of approval of the as-built location.

The cost of the Zoning Administrator's time and expenses for this enforcement case is $695.76. The attorney's fees and costs expended by the Town for this enforcement case total $23,999.16, including trial.

A civil penalty in a zoning or environmental enforcement case should be calculated so as to make it more expensive for defendants to violate the law than to comply with it. To fail to impose an appropriate penalty on a defendant who proceeds with a project after

6

being notified of the violation makes a mockery of the great majority of citizens who apply for and abide by zoning permits and other municipal land use approvals. That is, a penalty must be calculated to remove the economic benefit and the avoided costs achieved by the Defendant from the violation, as well as to compensate the enforcement entity generally for the legitimate costs of bringing the enforcement action, and to consider other relevant factors. See, e.g., City of St. Albans v. Hayford, 2008 VT 36, ¶¶ 15–18, and cases discussed therein.

By staking out and constructing the building in the violation location rather than the permitted location, Defendant avoided the need for blasting and ledge removal that would have been required to build in the permitted location, in the amount of approximately at least $2,500. She also had the use of the funds that otherwise would have had to have been expended for that purpose, over the period of the violation, calculated at the statutory 12% over the 1.55 years of the violation, or an additional $465.

At the time of the Notice of Violation, Defendant's avoided costs of compliance had changed, as she wished then to obtain a permit to leave the building in place, at that time by contesting the notice of violation and by seeking a variance. As of and from the Notice of Violation, her avoided costs of compliance may be measured as the cost of properly storing the building materials, most of which had not then yet been installed, so as not to void the manufacturer's warranty, including the cost of any dismantling and transportation of the materials to a suitable storage location, and storage for the 566 day duration of the violation, and transportation back to the job site. This amount is estimated to be $5,000, plus $930 representing 12% per year over the 1.55 years of the violation. As noted above, this estimate appears to be low; however, the Town did not present any more specific evidence supporting any greater amount.

The Town argues that the appropriate penalty should include both the avoided cost of blasting/ledge removal (that is, the cost of putting the building in the right place to begin

7

with) and the avoided cost of transportation and storage of the building materials (the cost of not building it until a permit amendment would have been obtained to put it in the as-built location). While in an enforcement case it is important for the penalty to account for the entire benefit accruing to a defendant from the violation, the Vermont Supreme Court in Agency of Natural Res. v. Deso, 2003 VT 36, ¶ 8, 175 Vt. 513, 515 cautioned that the determination of economic benefit should reflect a rational business choice and not "over-inflate the actual enjoyed benefit of noncompliance." In the present case, a rational person would not have done both the ledge removal (allowing construction in the right place) as well as the construction in the wrong place that resulted in the need for the storage of the building components. Accordingly, we will account for the avoided costs applicable to the actual scenario before the Court (because construction in the wrong place was ultimately allowed to remain): the dismantling and transportation of the building materials to and from an appropriate storage location, and the rental of that storage location from December 29, 2005 through July 18, 2007.

However, this amount need not be added to the amount that will already need to be assessed to compensate the Town. Rather, what is required in this civil penalty is that Defendant pay an amount at least as great as it would have cost her to comply. The compensatory amount to the Town, due to the duration of this litigation, is greater than the penalty would have been had it been imposed as of the date on which Defendant obtained the as-built permit. Therefore the penalty will be measured by the larger compensatory amount to the Town.

The duration of the violation was 566 days, from December 29, 2005 (seven days after the NOV) to the issuance of the as-built permit July 18, 2007. Given the already-substantial magnitude of the penalty, no additional daily amount is required to provide either specific or general deterrence.

8

Accordingly, the penalty amount is a total of $24,695 (rounded to the nearest whole dollar), consisting of $695.76 (representing the zoning administrator's time and costs), plus $23,999.16 (representing the attorney's fees and costs incurred by the town). This amount is intended to also account for the economic benefit or avoided costs obtained by Defendant from failing to cease the construction of the building in the then-unpermitted location between December 29, 2005 and July 18, 2007).

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the penalty hereby imposed for the violation is a total of $24,695, assessed as a penalty of $43.63 per day for the 566 days of violation.

Dated at Berlin, Vermont, this 29th day of August, 2008.

_____

Merideth Wright
Environmental Judge